# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

**CIVIL ACTION NO. 09-238-JBC**

**ROBIN E. HOWARD,**                                                        **PLAINTIFF,**

**V.**                       **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                               **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment. R. 7, 8. The court will deny the plaintiff's motion (R. 7) and grant the defendant's motion (R. 8).

## I.  Background

At the time of the alleged onset of Robin Howard's disability, she was forty-two years of age. AR 62. Howard has past work experience as a janitor, maid, and panel assembler at a furniture factory (AR 95-102) and has a high school education (AR 93). She applied for disability insurance benefits ("DIB") (AR 62-64) and supplemental security income ("SSI") (AR 681-85) on May 18, 2004. Howard alleges disability due to multiple impairments, including a history of bilateral carpal tunnel syndrome, compressed nerves in her arms, surgeries on her hands and arms, weakness in her hands, spondylosis in her neck and right knee, extreme anxiety, depression, and back pain. AR 86. Her claims for DIB and SSI were denied initially

1

on September 23, 2004 (AR 48-51), and again upon reconsideration on January 27, 2005 (AR 55-57). After a hearing on December 14, 2005 (AR 1753-84), Administrative Law Judge ("ALJ") James P. Alderisio determined that Howard did not suffer from a disability as defined by the Social Security Act and denied Howard's claims on January 27, 2006 (AR 696-708). The Appeals Council granted Howard's request for review on July 24, 2006 (AR 719-721), and remanded her case for further consideration. After another hearing on January 26, 2007 (AR 1785-1797), ALJ Alderisio issued a second unfavorable opinion on April 23, 2007 (AR 18-32).

Using the five-step sequential process for evaluating such a claim, the ALJ found at Step 1 that Howard had not engaged in substantial gainful activity since the date of the alleged onset of her disability, April 30, 2002. AR 23. At Step 2, the ALJ found that Howard suffered from the following impairments that qualify as "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c): a history of bilateral carpal tunnel syndrome, a history of bilateral epicondylitis, degenerative joint disease of the knee, degenerative disc disease of the cervical spine, obesity, chronic pulmonary obstructive disease, generalized anxiety disorder, obsessive compulsive disorder, and dysthymia. AR 23-27. At Step 3, the ALJ then determined that Howard's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 27. Considering her impairments, the ALJ determined that Howard had the residual functional capacity (RFC) to perform light work with some postural, environmental,

and mental limitations (AR 27-31), but decided at Step 4 that Howard was unable to perform any past relevant work (AR 31). Finally, the ALJ concluded at Step 5 that, due to Howard's, age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Howard can perform. AR 31-32. Howard requested a review of the ALJ's decision (AR 16), which the Appeals Council denied on May 13, 2009 (AR 10-15). Having exhausted her administrative remedies, Howard filed this action.

II.     **Legal Analysis**

Howard alleges that the ALJ improperly weighed the opinions of the physicians of record, particularly Dr. Jose Echeverria's physical assessment, and failed to explain adequately why various opinions were not given controlling weight, as required by Social Security Administration (SSA) regulations and rulings. R. 7, Exh. 1, at 6-7. This court will grant summary judgment on behalf of the Commissioner because substantial evidence supports the ALJ's RFC determination and denial of benefits. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 19811) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (defining substantial evidence as "more than a mere scintilla . . . such relevant evidence that a reasonable mind might accept as adequate to support a conclusion"). Moreover, the ALJ complied with the Appeals Council's remand order (AR 719-721) by giving further consideration to Dr. Echeverria's opinion and

3

by evaluating Howard's mental impairments according to the technique described in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c) (AR 24-27).

> A. The ALJ adequately explained why he did not give controlling weight to Dr. Echeverria's lifting limitations.

The ALJ found that Dr. Echeverria's opinion was "consistent with an ability to perform light exertion," even though he rejected Dr. Echeverria's limitations on Howard's ability to lift and/or carry. AR 29-30. He adequately explained that Dr. Echeverria's overly restrictive assessment conflicted with the opinions of Dr. J. Martin Favetto and agency physicians, and with the medical evidence of record, and that decision is supported by substantial evidence. 20 C.F.R. § 404.1527(d)(2) (requiring that good reasons be provided in a decision for the weight given to treating sources' opinions). *See also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (holding that an ALJ must set forth a reasoned basis for rejecting a treating source's opinion). Furthermore, the ALJ complied with the Appeals Council's remand order (AR 720-21) by correcting the reference to Dr. Echeverria's lifting assessment and further considering the opinions of Drs. Echeverria and Muffly (AR 24-25, 29-30).

As the ALJ noted, Dr. Echeverria treated Howard's "chronic medical conditions" – hypothyroidism, hypertension, COPD, anxiety, and depression – at quarterly appointments (AR 467-524, 657-675, 735-40, 743-61, 813-20) and completed an assessment of Howard's physical ability to do work-related activities in December of 2005 (AR 676-78). In that assessment, Dr. Echeverria reported numerous functional limitations that the ALJ incorporated into his findings. For

4

example, Dr. Echeverria's conclusion that Howard's ability to lift/carry, reach, handle, and push/pull were affected by her impairments (AR 676-77) is reflected in Howard's RFC restriction to no more than occasional handling and occasional reaching with the right hand (AR 27). The ALJ also imposed postural and environmental limitations, such as prohibiting Howard's exposure to vibration, dust, smoke, noxious gases and fumes, and climbing, that were not recommended by Dr. Echeverria. AR 27-31. The ALJ noted Dr. Echeverria's report of Howard's self-limiting behavior pattern and concluded that "[Howard's] statements concerning the intensity, persistence and limiting effects of [her] symptoms" were not entirely credible. AR 29.

Specifically, the ALJ found that Howard had the capacity to perform light exertion, despite acknowledging Dr. Echeverria's assessment that Howard could carry only one pound with both hands, two-and-a-half pounds with her right hand, and one pound with her left hand. AR 25, 29 (noting that Dr. Echeverria's "report of [Howard's] ability to lift is not clear as to the exact nature of the claimant's limitations"). The ALJ provided adequate rationale for discounting Dr. Echeverria's lifting limitations in favor of the opinions of Dr. Favetto, reviewing physicians, and the balance of medical evidence in the record. *See also Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (finding that the Secretary was not bound to the opinions of treating physicians where there was substantial evidence to the contrary).

5

Dr. Favetto is a hand specialist who worked with Howard from 2002 to 2004, during which time he performed several procedures on Howard's hands and elbows and oversaw her physical therapy. AR 171-84, 197-202, 217-46. Based on the nature and extent of Dr. Favetto's treatment relationship with Howard, the ALJ followed SSA regulations in giving controlling weight to Dr. Favetto's opinion with respect to Howard's hands and arms, over Dr. Echeverria's assessment. 20 C.F.R. § 404.1527(d)(2)(ii) (noting that the SSA will give less weight to an ophthalmologist's opinion about a claimant's neck pain than to another physician who has treated that claimant for neck pain). In June of 2003, Dr. Favetto indicated that Howard could return to light work duty ("Lifting twenty pounds maximum. Frequent lifting or carrying restricted to objects weighing 10 pounds or less (using both hands).") (AR 243), but restricted Howard from performing machine-paced work only in May of 2004 (AR 242).

Consulting agency physicians also concluded that Howard could perform light work with her physical impairments. Dr. S. Mukherjee and Dr. John Rawlings consistently concluded that Howard was able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and had a limited ability to push and/or pull in her upper extremities. AR 572, 622. The ALJ noted that those RFC assessments "are consistent with the longitudinal medical record and the claimant's subjective complaints of difficulty holding objects and reaching." AR 30. 20 C.F.R. § 404.1527(d)(4) (stating that more weight will be given to any medical opinion that is consistent with the record as a whole). Howard complains that the

ALJ erred in giving weight to Drs. Mukherjee and Rawlings's evaluations because they did not have the opportunity to review Dr. Echeverria's "later treatment records" or his December 2005 physical assessment. R. 7, at 10.

Admittedly, neither doctor could have considered documentation of medical visits after their assessments, so their opinions are not based on Howard's entire medical record. Notably absent from Dr. Echeverria's treatment records, though, is any reference to pain in Howard's hands, elbows, or arms, much less disabling pain or numbness. In fact, Dr. Echeverria mentioned only three times, in numerous years of seeing Howard, that she had carpal tunnel syndrome. AR 743, 749, 752. His conclusory physical assessment of Howard, comprised of check marks and little narrative, would not have enhanced the consulting physicians' understanding of Howard's condition or increased the accuracy of their assessments. AR 676-78. Moreover, the ALJ himself addressed these later records. AR 25, 29-30. *See Tyree v. Astrue*, No. 3:09-1091, 2010 WL 2650315, at *4 (M.D. Tenn. June 28, 2010) (citations omitted) (holding that an ALJ may rely on a earlier RFC if it is supported by the rest of the claimant's record, including information from period between the initial disability application and the administrative hearing). Thus, while it is true that the agency physicians' opinions were not based on a complete record, their assessments are consistent with each other, Dr. Favetto's opinion, and the record as a whole, including medical records received after their evaluations, so the ALJ's reliance on those opinions was not error.

Finally, the ALJ discounted the opinion of orthopedist Dr. David Muffly, who "documented [Howard's] subjective reports of severe pain" in both her hands and elbows after a single visit at the request of Howard's attorney. AR 24, 30. The ALJ explained that he did not agree with Dr. Muffly's assessment restricting Howard to lifting less than ten pounds (AR 214) because his examination "yielded no clinical findings that merit significant departure from previously assessed functional limitations" (AR 30). *See* 20 C.F.R. § 404.1527(d)(2) (stating that generally more weight is given to treating sources); 20 C.F.R. § 404.1527(e) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Thus, there is substantial evidence to support the ALJ's decision to give controlling weight to Dr. Favetto's opinion of Howard's physical capabilities and to arrive at Howard's RFC to do light work.

> B. The ALJ justifiably rejected Dr. Bennett's disabling mental restrictions and evaluated Howard's mental impairments in accordance with SSA regulations.

Because the degree of mental limitation assessed by Dr. Jeanne Bennett was internally inconsistent and excessive in light of the longitudinal evidence in the record, and because Dr. Bennett was a one-time examiner, the ALJ properly rejected Dr. Bennett's opinion. The ALJ also followed the procedure set forth in, and explained his evaluation of Howard's mental impairments in accordance with, 20 C.F.R. §§ 404.1520a(c) and 416.90a(c), per the Appeals Council remand order.

Dr. Bennett examined Howard only once at her attorney's request in August of 2004, when she assigned Howard a Global Assessment of Functioning ("GAF") score of 45. AR 209. *Hardaway*, 823 F.2d at 927 (stating that the opinion of a treating physician is entitled to weight substantially greater than a doctor who has seen the claimant only once). The ALJ stated, "I do not find this degree of limitation consistent with the evaluation findings, as she diagnosed a major depressive disorder (recurrent, moderate)." AR 30. He went on to explain that Dr. Bennett's notes reflected Howard's "fairly wide range of daily activities" and that Howard's "ability to understand, remember and carryout instructions for simple tasks was not affected and her ability to sustain attention and concentrations was described as slightly impaired," which is inconsistent with a GAF score of 45. AR 26, 30.

The Appeals Council vacated the first decision in part because Howard's mental RFC was inconsistent with the ALJ's assessment that Howard had a marked limitation in social functioning and moderate limitation in concentration, persistence, or pace. AR 720. Upon remand, the Appeals Council required the ALJ to "[f]urther evaluate the claimant's mental impairments in accordance with the special technique . . . documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas." AR 721. 20 C.F.R. §§ 404.1520a(c) and 416.90a(c). In his second decision, the ALJ determined that Howard had the same mental RFC, but his

9

assessment of her difficulties in maintaining social functioning changed from marked to moderate.  AR 27-28.

The ALJ provided appropriate rationale supporting the regulatory analysis of Howard's mental impairments, which is consistent with her RFC.  AR 27 (mentioning that he documented the application of the special technique "throughout the rationale and decision").  For example, the ALJ noted that three mental heath professionals assigned Howard a GAF that was demonstrably higher than that of Dr. Bennett, who indicated that Howard had serious limitations of functioning.  AR. 26.  In August of 2004, a psychologist at Cumberland River Comprehensive Care Center, where Howard had been seen since 2002, assigned Howard a GAF of 60.  *Id*.  Another psychologist, Dr. Stuart A. Cooke, examined Howard at her attorney's request in March of 2004, where he diagnosed her with atypical depressive disorder, generalized anxiety disorder, and social anxiety, and assigned her a GAF of 60.  *Id*.  A staff psychiatrist at Comprehensive Care noted improvement in Howard's symptoms and assigned her a GAF of 68 in July 2005.  *Id*.  The ALJ further explained that treatment records from Comprehensive Care indicated that Howard's mental condition was improving and that "[u]pdated records from 2006 indicate the claimant continued to be stable as long as she was maintained on medication."  AR 26-27.

As to the ALJ's decision that Howard had a "limited but satisfactory ability . . . [t]o maintain[] attention and concentrate[]," he pointed out that a Comprehensive Care psychiatrist's refusal to prescribe ADHD medication to

Howard, or any adult, casts doubt upon the report of Dr. Barbara Berk that Howard may benefit from such medication. AR 26. Moreover, state agency mental health experts determined that Howard had a mild to moderate degree of functional limitations, and specifically agreed that Howard could complete mental aspects of routine work within a schedule. AR 27, 590, 601-02.

There is substantial evidence to support the weight given to Dr. Bennett's opinion and apply the conclusions of Howard's long-time treating mental health professionals in arriving at Howard's RFC. Other than Dr. Bennett, the treating, consulting, and reviewing psychologists's opinions are consistent with the ALJ's decision that Howard's mental capabilities are mild to moderately limited.

### III. Conclusion

Accordingly, **IT IS ORDERED** that Howard's motion for summary judgment (R. 7) is **DENIED** and the Commissioner's motion for summary judgment (R. 8) is **GRANTED**. A separate order will enter accordingly.

Signed on August 17, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY